IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., AS BROADCAST LICENSEE OF THE SEPTEMBER 14, 2013 THE ONE: FLOYD MAYWEATHER, JR. V. SAUL ALVAREZ WBC MIDDLEWEIGHT CHAMPIONSHIP FIGHT PROGRAM; | § § § § § § § § § § § § § § § § § | 5-16-CV-00915-FB-RBF |
| *Plaintiff*, | | |
| vs. | | |
| VENANCIO IRETA, INDIVIDUALLY AND D/B/A SOUTHSIDE BARR & GRILL | | |
| *Defendant*. | | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the Motion for Summary Judgment filed by Plaintiff J&J Sports Productions Inc. ("J&J Sports"). *See* Dkt. No. 13. This case has been referred to the undersigned for disposition pursuant to Federal Rule of Civil Procedure 72 and Rules CV-72 and 1 to Appendix C of the Local Rules for the United States District Court for the Western District of Texas. Plaintiff's action arises under the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553, 605 (the "FCA"), and therefore the District Court has federal question jurisdiction, *see* 28 U.S.C. § 1331. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Having considered Plaintiff's Motion, Dkt. No. 13, Defendant's Response, Dkt. No. 14, Plaintiff's Reply, Dkt. No. 15, and the entire case file, the undersigned recommends the Motion for Summary Judgment, Dkt. No. 13, be

1

**DENIED**. For the reasons discussed below, J&J Sports has not met its summary judgment burden.

I.   **Factual and Procedural Background**

On September 4, 2013, J&J Sports bought the exclusive license to exhibit and sublicense the closed-circuit telecast of the September 14, 2013 Floyd Mayweather v. Saul Alvarez Fight Program and accompanying undercard and preliminary matches at commercial establishments. *See* Ex. A to Mot. ("Riley Aff.") ¶ 4; Ex. A-1 to Mot. As the licensee, J&J Sports only authorized the closed-circuit broadcast of the fight to be exhibited in commercial establishments that entered into a valid license agreement with J&J Sports. Riley Aff. ¶¶ 5-7. To safeguard against the unauthorized interception or receipt of the telecast, its signal "was electronically coded or 'scrambled'"; only establishments that contracted with J&J Sports were provided the capability to receive and decode the signal. *Id.* ¶ 6.

On September 14, 2016, J&J Sports sued Defendant Venancio Ireta, alleging that on September 14, 2013, Ireta illegally intercepted and exhibited the fight at his establishment, Southside Bar & Grill, without paying the required licensing fee and in violation of §§ 553 or 605 of the FCA. *See* Compl. On October 31, 2016, Ireta filed an answer, admitting ownership of Southside Bar & Grill but denying that he intercepted or received the fight at his establishment. *See* Answ. On November 30, 2017, J&J Sports filed the instant Motion for Summary Judgment. Dkt. No. 13.

II.   **Legal Standards**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts reflecting a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. If, however, the party moving for summary judgment fails to satisfy its initial burden, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

**III.     Analysis**

As an initial matter, only § 605 could apply here, even though J&J Sports seeks summary judgment under both § 605 and § 553. Section 605 applies to the unauthorized interception of radio or satellite signals; it doesn't apply to cable communications. *See J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 351 (5th Cir. 2014). J&J Sports admits that the fight transmission was via satellite. *See* Riley Aff. ¶ 6. Only § 605 could apply here. Section 553 applies in the opposite scenario, which is not at issue here. Accordingly, J&J Sports' request for summary judgment under § 553 should be denied. *See id.*; *see also J & J Sports Prods., Inc. v. Mattech, LLC*, No. CIV.A. 14-987, 2015 WL 3852111, at *2 (E.D. La. Jun. 22, 2015) (citing *Mandell* and dismissing plaintiff's § 553 claims where the evidence indicated the transmission occurred via satellite). Thus, the only remaining issue presented by J&J Sports' motion is whether Ireta violated § 605.

Section 605 of the FCA prohibits an unauthorized person from "receiv[ing] or assist[ing] in receiving any interstate or foreign communication by radio and us[ing] such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Section 605 further prohibits anyone unlawfully receiving such communications from divulging or publishing the information or transmission. *Id.* The FCA affords a private right of action to "[a]ny person aggrieved by any violation of" the Act. 47 U.S.C. § 605(e)(3)(A). Further, "[t]he FCA is a strict liability statute, and the plaintiff is required only to prove the unauthorized exhibition of the intercepted transmission." *Joe Hand Promotions, Inc. v. Macias*, No. H–11–1773, 2012 WL 950157, at *2 (S.D. Tex. Mar. 19, 2012).

At this stage, J&J Sports has not established that Ireta broadcast the fight at his establishment on the night in question. The only evidence J&J Sports offers in support of its

motion is ultimately inconclusive. Without conclusive proof of this key fact, summary judgment for J&J Sports is not warranted.

The motion relies solely on affidavits from two auditors—Martinez and McClung—who each attest to viewing a preliminary bout (a fight between Garcia and Matthyse)[1] on September 14 at an establishment located at 4200 Interstate 35 North in Natalia, Texas 78059. *See* Riley Aff. ¶ 8 (incorporating by reference Ex. A-2 to Mot. ("McClung Aff." and "Martinez Aff.")). Too many significant facts are inconsistent between the two affidavits, rendering them unreliable. For example, both McClung and Martinez attest that they arrived at Ireta's establishment at around the same time (10:20 pm and 10:18 pm, respectively). Yet each was apparently assessed a different cover charge—$15 for Martinez compared to only $5 for McClung. This raises the reasonable inference that they were at different establishments.

The inconsistencies between these accounts of the "same" establishment on the same night continue. Each account differs regarding the number of televisions in the establishment. Martinez observed a total of four televisions, two of which had screens approximately 42 inches across. The other two screens were much smaller (27 inches and 32 inches), Martinez says. But McClung only saw two televisions, both in the bar area and having 52-inch screens. Martinez and McClung also describe the fighters' attire differently. According to Martinez, Garcia was wearing black and white trunks while Matthysse was dressed in blue and gold. According to McClung, however, Garcia wore yellow and Matthyse blue and black. Martinez estimated the establishment's capacity at 200 people. McClung estimated only 100 people.

---

[1] *See* Riley Aff. ¶ 3 (explaining that the Garcia v. Matthysse fight was a preliminary bout to the main event).

According to J&J Sports, these inconsistencies are too minor to reflect a genuine issue of material fact. Repl. at 4-5, The inconsistencies, however, are sufficiently pervasive and consistent to undermine the credibility and reliability of both affidavits.

Moreover, in addition to these inconsistencies, Southside Bar & Grill's manager and agent, Martha Crouch, submitted a sworn statement contradicting Martinez and McClung. According to Crouch, she was "on duty and on site on September 14, 2013" and she "did not authorize, nor [is she] aware of any broadcast of the boxing program at issue in this lawsuit on the night of question." Crouch Aff. ¶ 1. Contrary to J&J Sports' assertions, this statement is sufficient to demonstrate that Crouch has personal knowledge of the events that occurred at Southside Bar & Grill on September 14, 2013 and therefore is competent to testify regarding the matters in her affidavit. *See* Fed. R. Civ. P. 56(c) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

While Crouch later reveals that a portion of the bar was rented for a private function over which neither she nor Ireta had control, she unequivocally asserts that "we also did not broadcast the program in question." *Id.* ¶ 3-4. She also provides facts in her affidavit contradicting the auditors' descriptions of the establishment. For example, contrary to McClung's assertions, Crouch attests that "[Ireta's establishment] does not have any big screen televisions anywhere within the bar." *Id.* ¶¶ 3. Further, while Martinez and McClung provide photographs that allegedly—but far from convincingly—depict the outside of Ireta's establishment, Crouch provides sworn testimony that she "do[es] not believe that the attached photos actually depict the Southside Bar & Grill." *Id.* ¶ 6. It also bears mentioning that none of these photographs are authenticated. Although summary judgment evidence need not necessarily be presented in

6

admissible form, the proponent of the document must still explain that it is possible to place that information in admissible form. *See Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017). There is no evidence (or even an allegation) that Martinez and McClung will testify to the authenticity of these photographs, and, Crouch's affidavit creates a genuine issue regarding their authenticity. After reviewing the auditor's description of the establishment, Crouch swears that she "do[es] not believe that the Plaintiff's investigators were actually present at the Southside Bar & Grill on the night in question." Crouch Aff. ¶ 6.

Viewing the evidence in the light most favorable to Ireta, as the Court must do at this stage, the conflicting statements in the auditors' affidavits, combined with the statements made by Crouch in her affidavit, create a genuine issue of fact as to whether the fight was broadcast at Ireta's establishment on the night in question. To grant summary judgment would require the undersigned to make a credibility determination in J&J Sports' favor, which is improper at this stage, particularly in light of the conflicting evidence in the record and the requirement that on summary judgment all inferences must resolved in the nonmovant's favor. *See Davis v. EGL Eagle Glob. Logistics L.P.*, 243 Fed. App'x 39, 42 (5th Cir. 2007) ("In ruling on a summary judgment motion, courts shall not weigh the evidence or make credibility determinations.") (citing *Anderson*, 477 U.S. at 248); *Harbor Ins. Co. v. Trammell Crow Co., Inc.*, 854 F.2d 94, 98 (5th Cir. 1988) (explaining that on summary judgment "[a]ll reasonable factual inferences from the record must be resolved in favor of the nonmovant"); *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 81 (5th Cir. 1987) ("While the mere claim that an affidavit is perjured is insufficient, where specific facts are alleged that if proven would call the credibility of the moving party's witness into doubt, summary judgment is improper.").

## IV. Conclusion

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Summary Judgment, Dkt. No. 13, be **DENIED**.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual

findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 14th day of August, 2018.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE